CHARLES MENDOLA, Plaintiff, *v.* ROBERT E. DINEEN, as Superintendent of Insurance of the State of New York, Defendant.

Supreme Court, Special Term, New York County, July 18, 1945.

*Arnold W. Arnold* for plaintiff.

*Nathaniel L. Goldstein,* Attorney-General (*William F. McNulty* and *Abe Wagman* of counsel), for defendant.

HECHT, J. Plaintiff moves for judgment on the pleadings, pursuant to rule 112 of the Rules of Civil Practice. Defendant cross-moves for judgment dismissing the complaint on the merits.

Plaintiff sues for a judgment declaring sections 40, 42 and all of article VI of the Insurance Law of the State of New York unconstitutional as in contravention of the commerce clause of the Constitution of the United States (U. S. Const., art. I, § 8). He asks that defendant, as Superintendent of Insurance of the State of New York, be restrained from enforcing the provisions of the Insurance Law above referred to.

In summary, the complaint alleges that plaintiff is a resident of the State of New York and a member of the American Farmers Insurance Company. That this company is a benefit insurance company organized and operating under the laws of the State of Arizona. That it is not licensed to transact the business of insurance in the State of New York. That it is engaged in interstate commerce because it negotiates and executes insurance policy contracts, and transmits and receives communications of information, money and papers across the State lines of many States of the Union, including the State of New York. That plaintiff has been selling insurance policies issued by the American Farmers Insurance Company in the State of New York without a license. That he is engaged in interstate commerce in that he takes an active part in the negotiation and execution of applications for insurance on behalf of American Farmers

Insurance Company and transmits and receives information, money and documents across the State lines of Arizona and New York. That pursuant to the provisions of sections 40, 42 and article VI of the Insurance Law, defendant has ordered him to cease and desist from his activities as agent.

Succinctly stated, plaintiff's contention is that by virtue of the decision of the Supreme Court of the United States in *U. S.* v. *Underwriters Assn.* (322 U. S. 533), all State insurance laws and regulations are invalid, insofar as they affect foreign companies and their agents, solely because they are engaged in interstate commerce, and that, in the absence of and until there is Congressional action, such concerns and their employees may operate in any State, free of regulation.

The question as to the control which the States can exercise over the business of insurance was first presented to the United States Supreme Court in 1868, in the case of *Paul* v. *Virginia* (8 Wall. [U. S.] 168). A statute of Virginia precluded any foreign insurance company from doing business in the State without first obtaining a license to which certain restrictions were attached. The statute was attacked as unconstitutional, on the ground that it constituted an unlawful interference with interstate commerce and that the business of insurance could be regulated only by Congress. The Supreme Court held that the business of insurance did not constitute interstate commerce and upheld the validity of the State legislation. Through the ensuing years this same question was presented to the Supreme Court on numerous occasions and in each case the court upheld the validity of State legislation on the theory, first enunciated in *Paul* v. *Virginia* (*supra*), that the business of insurance is not interstate commerce, even though it crossed State lines (*Liverpool Ins. Co.* v. *Massachusetts,* 10 Wall. 566; *Phila. Fire Association* v. *New York,* 119 U. S. 110; *New York Life Insurance Co.* v. *Cravens,* 178 U. S. 389; *N. Y. Life Ins. Co.* v. *Deer Lodge County,* 231 U. S. 495; *Bothwell* v. *Buckbee, Mears Co.,* 275 U. S. 274).

In 1943 the South-Eastern Underwriters Association and others were indicted by the United States of America for a conspiracy to restrain interstate trade and commerce by fixing and maintaining arbitrary and noncompetitive premium rates on fire and specified allied lines of insurance, and for a conspiracy to monopolize trade and commerce in the same lines of insurance among certain States. The District Court of the United States for the Northern District of Georgia sustained a demurrer to the indictment and directed that it be dismissed

(51 F. Supp. 712). The United States of America appealed, and the case went on appeal, in consonance with the Criminal Appeals Act (U. S. Code, tit. 18, § 682), directly to the Supreme Court of the United States.

The record presented two questions only: (1) Was the Sherman Act (U. S. Code, tit. 15, §§ 1, 2) intended to prohibit conduct of fire insurance companies which restrains or monopolizes the interstate fire insurance trade? (2) If so, do fire insurance transactions which stretch across State lines constitute commerce among the several States so as to make them subject to regulation by Congress under the commerce clause?

The Supreme Court, in a four-to-three decision rendered on June 5, 1944, answered these questions in the affirmative, thereby overruling a position it had maintained for over seventy-five years. Justice BLACK delivered the opinion of the court; Chief Justice STONE, Justices FRANKFURTER and JACKSON dissented. Justices ROBERTS and REED took no part in the consideration or decision of the case. Justice BLACK, in his opinion, analyzed the previous decisions of the court and stated (pp. 534, 544–545): '' For seventy-five years this Court has held, whenever the question has been presented, that the Commerce Clause of the Constitution does not deprive the individual states of power to regulate and tax specific activities of foreign insurance companies which sell policies within their territories. Each state has been held to have this power even though negotiation and execution of the companies' policy contracts involved communications of information and movements of persons, moneys, and papers across state lines. Not one of all these cases, however, has involved an Act of Congress which required the Court to decide the issue of whether the Commerce Clause grants to Congress the power to regulate insurance transactions stretching across state lines. Today for the first time in the history of the Court that issue is squarely presented and must be decided. * * * In all cases in which the Court has relied upon the proposition that ' the business of insurance is not commerce,' its attention was focussed on the validity of state statutes — the extent to which the Commerce Clause automatically deprived states of the power to regulate the insurance business. Since Congress had at no time attempted to control the insurance business, invalidation of the state statutes would practically have been equivalent to granting insurance companies engaged in interstate activities a blanket license to operate without legal restraint. As early as 1866 the insurance trade, though still in its infancy, was subject to wide-

spread abuses. To meet the imperative need for correction of these abuses the various state legislatures, including that of Virginia, passed regulatory legislation. *Paul* v. *Virginia* upheld one of Virginia's statutes. To uphold insurance laws of other states, including tax laws, *Paul* v. *Virginia's* generalization and reasoning have been consistently adhered to.''

'' Today, however, we are asked to apply this reasoning, not to uphold another state law, but to strike down an Act of Congress which was intended to regulate certain aspects of the methods by which interstate insurance companies do business; and, in so doing, to narrow the scope of the federal power to regulate the activities of a great business carried on back and forth across state lines. But past decisions of this Court emphasize that legal formulae devised to uphold state power cannot uncritically be accepted as trustworthy guides to determine Congressional power under the Commerce Clause.''

Although the unequivocal holding of the court is that, where the business of insurance stretches across State lines, it constitutes interstate commerce, the majority opinion expressly limits itself to the applicability of the Sherman Antitrust Act to the insurance business (pp. 538–539): '' The record, then, presents two questions and no others: (1) Was the Sherman Act intended to prohibit conduct of fire insurance companies which restrains or monopolizes the interstate fire insurance trade? (2) If so, do fire insurance transactions which stretch across state lines constitute ' Commerce among the several States ' so as to make them subject to regulation by Congress under the Commerce Clause? Since it is our conclusion that the Sherman Act was intended to apply to the fire insurance business we shall, for convenience of discussion, first consider the latter question.''

The majority and dissenting members of the court recognized the fact that it might be claimed that the court's decision constituted a holding that State regulation of foreign companies doing business within its borders violated the commerce clause of the Constitution. In negation of such construction, the court said (pp. 547–549): '' Another reason advanced to support the result of the cases which follow *Paul* v. *Virginia* has been that, if any aspects of the business of insurance be treated as interstate commerce, ' then all control over it is taken from the States and the legislative regulations which this court has heretofore sustained must be declared invalid.' Accepted without qualification, that broad statement is inconsistent with many decisions of this Court. It is settled that, for Constitutional

purposes, certain activities of a business may be intrastate and therefore subject to state control, while other activities of the same business may be interstate and therefore subject to federal regulation. And there is a wide range of business and other activities which, though subject to federal regulation, are so intimately related to local welfare that, in the absence of Congressional action, they may be regulated or taxed by the states. In marking out these activities the primary test applied by the Court is not the mechanical one of whether the particular activity affected by the state regulation is part of interstate commerce, but rather whether, in each case, the competing demands of the state and national interests involved can be accommodated. And the fact that particular phases of an interstate business or activity have long been regulated or taxed by states has been recognized as a strong reason why, in the continued absence of conflicting Congressional action, the state regulatory and tax laws should be declared valid."

It is now settled law that the commerce clause of the Federal Constitution does not *ipso facto* bar a sovereign State from adopting regulatory and protective measures of a reasonable character, in the interest of the health, safety, morals and welfare of its people, solely because interstate commerce may be involved.

"When Congress has not exerted its power under the Commerce Clause, and state regulation of matters of local concern is so related to interstate commerce that it also operates as a regulation of that commerce, the reconciliation of the power thus granted with that reserved to the state is to be attained by the accommodation of the competing demands of the state and national interests involved." (*Parker* v. *Brown,* 317 U. S. 341, 362; see *The Minnesota Rate Cases,* 230 U. S. 352, and cases cited therein.)

Are the sections of the Insurance Law under attack, regulatory and protective measures of a reasonable character and a proper exercise of the police power of the State? Analysis of the provisions indicates an affirmative answer to this question because the provisions in no manner discriminate between foreign and domestic companies and their agents, nor do they attempt to arbitrarily exclude foreign operators from doing business within the State.

Section 40 of the Insurance Law applies alike to anyone who seeks to do an insurance business in this State, whether resident or not. The Superintendent of Insurance, in granting, revoking, renewing or refusing to renew a license under this

section, is required to so act as to "best promote the interests of the people of this state." (§ 40, subd. 4.) The action of the superintendent is subject to judicial review. He may not act arbitrarily or in a discriminatory manner regardless of whether the applicant is a domestic or foreign insurer (*Matter of Northwestern Nat. Ins. Co.* v. *Pink*, 288 N. Y. 359; *Stern* v. *Metropolitan Life Insurance Co.*, 169 App. Div. 217, affd. 217 N. Y. 626).

Section 42 of the Insurance Law deals specifically with the requirements for the licensing of a foreign or alien insurer. The language of that section is clear and unambiguous. Throughout its entirety there is plainly apparent an attempt on the part of the Legislature to limit foreign insurance companies to the same rights and liabilities as domestic insurers. The Legislature controls and regulates domestic insurers for the protection of the people of the State; foreign companies are made subject to the same regulations.

In *Hoopeston Co.* v. *Cullen* (318 U. S. 313, 320–321) the Supreme Court said: "These regulations can not be attacked merely because they affect business activities which are carried on outside the state. Of necessity, any regulations affecting the solvency of those doing an insurance business in a state must have some effect on business practices of the same company outside of the state. Nothing in the Constitution requires a state to nullify its own protective standards because an enterprise regulated has its headquarters elsewhere. The power New York may exercise to regulate domestic insurance associations may be applied to foreign associations which New York permits to conduct the same kind of business. The appellants can not, ' by spreading their business and activities over other states * * * set at naught the public policy ' of New York. *Atlantic & Pacific Tea Co.* v. *Grosjean*, 301 U. S. 412, 427. Where as here the state has full power to prescribe the forms of contract, the terms of protection of the insured, and the type of reserve funds needed, ' the mere fact that state action may have repercussions beyond state lines is of no judicial significance.' *Osborn* v. *Ozlin, supra*, at 62. Neither New York nor Illinois loses the power to protect the interests of its citizens because these associations carry on activities in both places. *Alaska Packers Assn.* v. *Industrial Accident Comm'n* [294 U. S. 532], *supra*. We think the regulations themselves, since they are aimed at the protection of the solvency of the reciprocals or at promoting the convenience with which New York residents may do their insurance business, are all within the scope of state power. *Osborn* v. *Ozlin, supra*, at 65, 66."

Article VI provides for the licensing and regulation of insurance agents, brokers and adjusters. Section 130 of article VI provides that as to certain types of insurance the contract must be " issued or effectuated through, or countersigned by, a resident licensed insurance agent of the state." (§ 130, subd. 1.) If a foreign insurer could issue policies through a nonresident and unlicensed agent or broker, then, of course, all the regulations enacted by the State and applicable to anyone writing insurance within its borders, would be rendered meaningless. Similar enactments in other States have been upheld by the Supreme Court (*Osborn* v. *Ozlin,* 310 U. S. 53; *Hoopeston Co.* v. *Cullen,* 318 U. S. 313, *supra; Holmes* v. *Springfield Fire Ins. Co.,* 311 U. S. 606).

The foregoing provisions in no sense control or hinder the flow of interstate commerce. They may have an incidental effect on such commerce, but only in a measure which is far overshadowed by the necessity for such regulation for the protection of the residents of this State in a field where experience has repeatedly demonstrated that such protection is essential. Foreign corporations and their agents are not prevented from doing business in New York; they are merely required to abide by the same rules and regulations which apply to domestic insurers and their agents.

Whatever uncertainty may have existed as to the scope of the decision in *U. S.* v. *Underwriters Assn.* (322 U. S. 533, *supra*) was settled by Public Law 15 of the 79th Congress, approved March 9, 1945. In enacting this legislation, Congress recognized the necessity of State regulation of foreign insurance companies doing business within their borders and specifically expressed its intention to leave such regulation to the States.

The act is expressly entitled, " An Act to express the intent of the Congress with reference to the regulation of the business of insurance." It embodies a clear and explicit declaration " that the continued regulation and taxation by the several States of the business of insurance is in the public interest, * * * ". " * * * silence on the part of the Congress," the act continues, " shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." This latter provision was unquestionably inserted to forestall an argument that since interstate commerce is involved, silence on the part of Congress is to be taken as an indication of an intention to leave insurance free of regulation. " The business of insurance," says the act, " and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."

To further prevent possible attack on State regulation, the act provides that future enactments of Congress which might in general terms be applicable to insurance, shall not so apply unless the contrary intent of Congress is specifically shown.

Since the decision of the Supreme Court in the *South-Eastern Underwriters* case (*supra*) and prior to the enactment by Congress of Public Law 15, two cases involving the same question presented by the case at bar, had come before Federal courts. On January 16, 1945, the United States District Court, Southern District of California, Central Division, decided the case of *First Nat. Ben. Soc.* v. *Garrison* (58 F. Supp. 972). The court, in its opinion, reviewed the principles of constitutional law which we have heretofore discussed and upheld the validity of the insurance law of California insofar as it applied to foreign insurance companies and their agents. A contrary view was taken by the United States District Court of Boise, Idaho, in the case of *Ware* v. *Travelers Ins. Co.* No opinion was written by the court; the order merely stated: "The Court is of the opinion that the statute upon which this action is based is repugnant to the 14th Amendment of the Constitution and is also an unconstitutional restriction on interstate commerce."

This determination was reversed by the United States Circuit Court of Appeals for the Ninth Circuit, on June 29, 1945 (150 F. 2d 463, 464), the court stating: "According to appellees, the court below, in holding the Idaho statute in conflict with the commerce clause, relied on the decision in United States *v.* South-Eastern Underwriters Ass'n, 322 U. S. 533 * * *. We see no good reason for the holding. The Court in the South-Eastern Underwriters case pointed out that, for constitutional purposes, certain activities of a business may be intrastate while other phases of the same business may be interstate. 'There are,' said the Court, 'other activities which, though subject to federal regulation, are so intimately related to local welfare that, in the absence of Congressional action, they may be regulated or taxed by the states.'"

This court accordingly determines that all of the provisions of the Insurance Law here under attack are not violative of the United States Constitution. To hold otherwise would not only disregard well-settled principles of constitutional law and an express declaration of policy on the part of Congress, but would create a chaotic condition in a field which intimately and vitally affects the welfare of the people of this State.

Plaintiff's motion is denied; defendant's cross motion is granted. Settle order.