George Tilzer, J.
Petitioners in this article 78 proceeding seek a determination vacating and annulling regulation No. 41 promulgated by respondent on August 23,1962, effective October 1, 1962. Petitioners are “ excess line ” brokers, which may be defined as a person, firm or association authorized within certain restrictions to procure specified types of insurance policies from insurance companies which are not authorized to do business in this State.
Provisions for the licensing and control of such brokers are incorporated in section 122 of the Insurance Law. Pursuant to that section, a licensee is 16 required to use due care in selecting the unauthorized insurer ”, and the license “ may be suspended or revoked ” by the Superintendent of Insurance whenever in his judgment it “ will best promote the interests of the people of this state.” (Subd. 1.) "Whenever insurance is procured under such a license, affidavits are required by both the broker and the insured, setting forth that “ after diligent effort,” the coverage sought could not be procured from authorized insurers (subd. 6).
The pronounced purpose of regulation 41 is to establish procedures deemed essential in the “ exercise of the due care and diligence required by law.” It further provides that “In the absence of satisfactory explanation, failure by a licensee to comply with the requirements of this regulation may be considered as evidence of conduct inimical to the interests of the people of this State within the meaning of Section 122 and as evidence of incompetency and/or untrustworthiness within the meaning of Section 119.”
The decretal parts of the regulations may be summarized as follows:
Section 1: Forms for application and renewal of the license.
Section 2: Forms of affidavits to be filed by licensee and insured pursuant to subdivisions 6 and 9 of section 122.
*309 Section 3: Requirement that the risk must be rejected by at least five authorized insurers and proof obtained to that effect.
Section 4: Provision that no licensee may receive or collect from insured any greater sum than the premiums fixed by the unauthorized insurer unless the licensee obtains from the insured a written memorandum 1‘ clearly defining the amount or extent of such compensation. ’ ’
Section 5: Requirement that the licensee inquire into the character and capacity of unauthorized insurers and obtain and keep available specified financial information with respect to the insurers.
Section 6: Requirement of identification by name and address in licensee’s affidavit of the unauthorized insurers, and that the insurer consent to service of process in this State by designating the Superintendent of Insurance as the person who may be served.
Section 7: Provision that insured must be informed of acceptance, rejection and status of his application for insurance, and a requirement that no document may be issued which resembles a policy unless it actually is a policy. Also, if a delivered document is not a policy but merely a confirmation of placement of insurance, then it must bear the legend in not less than 10-point bold red type that “ This is not an insurance policy and the insurer (insurers) herein referred to is (are) not licensed by the State of New York and not subject to its supervision.”
Section 8: Requirement of prompt delivery of policy and legend that it was written by an unauthorized insurer.
Section 9: Requirement of disclosure to insured of assessment provisions.
Section 10: Provision that in the event of cancellation, the licensee shall use his ‘ ‘ best efforts ’ ’ to collect for the insured all unearned premiums due.
Section 11: Prohibition against illegal coverage.
Section 12: Prohibition against advertising which calls attention to unauthorized insurers.
Section 13: Record keeping requirements.
(See 11 NYGRR, Part 27.)
It is petitioners’ contention that these provisions are unauthorized by the Insurance Law and violative of constitutional rights. The power of respondent to prescribe regulations not inconsistent with statutory provisions to effectuate any of the powers given him by law or to prescribe forms or interpret statutory provisions is not challenged (Insurance Law, § 21). The question here is whether in issuing the regulation respondent exceeded the Bowers delegated to him by the Legislature.
*310 By the foregoing provisions, the Insurance Department laid down standards or guide lines to provide detailed interpretation of the broad powers granted it by statute. The burden rests upon the petitioners to show that the regulation “is so lacking in reason for its promulgation that it is essentially arbitrary.” (Matter of Marburg v. Cole, 286 N. Y. 202, 212.) Moreover, any attack upon the regulation must be considered in the light of the broad and comprehensive power given to the Superintendent of Insurance to issue rulings for the protection of the interests of the People of this State. For that matter, the right to engage in the business of insurance is a privilege granted by the State, and those who engage therein, be they insurers or brokers, are subject to the strictest regulation. In the instant situation the fact that the regulation may affect business activities which are carried on outside the State cannot deprivate from the power of the State to protect the interests of its citizens. All the more must these interests be protected when, by the very nature of the excess-line business, the insurer is beyond the regulatory power of the Superintendent. The law is settled that the regulation of the business of insurance, and of every person engaged therein, is subject to the laws of the several States (Hoopeston Co. v. Cullen, 318 U. S. 313; Mendola v. Dineen, 185 Misc. 540, 547).
In legislating the standard of conduct required of excess-line brokers, the Legislature adopted the general requirements of “ due care ” and “ diligent effort.” The couching of standards in general terms rather than specific, however, make them none the less valid if they are capable of reasonable application (see People v. Bevevino, 202 Misc. 723; Matter of Aloe v. Dassler, 278 App. Div. 975). It is quite impossible for the Legislature to appraise beforehand the myriad situations in which a particular policy is to be applied and to formulate specific rules for each situation. Necessity therefore requires that detailed rules be left to the public authority.
In issuing the regulation here in question, respondent has delineated for the guidance of those affected practical procedures to ensure compliance with the legislative mandates. The regulation is, however, not so arbitrary or unreasonable in approach as to require strict observance of its rules in all cases. It allows for 1 ‘ satisfactory explanation ’ ’ in appropriate situations, and allows for deviation from pronounced policies where such are necessary under the particular circumstances.
Respondent’s regulation appears in all respects to be within the confines of legislative policy and statutory limitations. It is *311 merely a manifestation as to how this policy will be implemented, and not an extension of legislative decree. It maintains the delicate balance between maximum protection for the local insurance purchaser and constitutional restrictions against controlling insurers outside the borders of this State. Private rights which petitioner fears may be affected by possible unreasonable application of the regulation, may be protected by access to the courts.
The motion is accordingly denied in all respects and the petition dismissed.