THE INDIANA CREOSOTING COMPANY *v.* McNUTT, GOVERNOR ET AL.

[No. 26,690. Filed December 23, 1936.]

*Arthur E. Hopkins* and *Boruff & Boruff,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, *Joseph W. Hutchinson,* Assistant Attorney-General, and *Joseph P. McNamara,* Deputy Attorney-General, for appellees.

HUGHES, J.—This is an action by the appellant against the appellees, comprising the Department of Treasury of the State of Indiana, for money paid as excise tax imposed upon the alleged receipts of gross income derived from business in the State of Indiana, under the provisions of the Indiana Gross Income Tax Act of 1933, being Chapter 50, Acts 1933, §§64-2601 to 64-2629, Burns 1933, §§15981-16010, Baldwin's 1934.

The action was instituted under section 12 of said act which provides that any taxpayer improperly

charged with any tax collected under the Act may recover the amount improperly collected by applying to the Department of Treasury for such refund, and in the event such refund is not allowed, may institute suit for the recovery of any such amount in the court of the county where such taxpayer resides.

The complaint was in one paragraph in which it was alleged that the appellant, plaintiff below, reported the gross income for the periods ending March 31, 1934, and June 30, 1934, derived from its business and paid taxes thereon at the rate of one-fourth of one per cent, as provided in section 3-a of said Act. It is further alleged that the Indiana Creosoting Company is an Indiana corporation with its principal office and place of business located at the city of Bloomington, Indiana, and was engaged in the business of creosoting products at said plant at Bloomington, and in the business of manufacturing, compounding or preparing for sale, profit or use, articles, substances and commodities. It further appears from the complaint that after the payment by appellant of its gross income tax figured at the rate of one-fourth of one per cent the Department of Treasury audited the returns of the appellant, and assessed a deficiency tax for each of the aforesaid periods, amounting to $35.64 for the period ending March 31, 1934, and $78.28 for the period ending June 30, 1934, and applied the rate of one per cent upon the amount of appellant's gross income; that the appellant paid the deficiency tax, and notified the department that it would institute an action under section 12 of said Act to recover the amount of the tax which the appellant claimed was unlawful in that it was fixed at the rate of one per cent.

The error assigned for reversal is that the court erred in overruling appellant's motion for a new trial. The reasons assigned in the motion for a new trial were: (a) That the decision of the court was not sustained by

sufficient evidence; and (b) that the decision was contrary to law.

It is contended by appellant under points and authorities numbered one and two that the appellant was engaged in interstate commerce in running its plant at Bloomington, Indiana, with different states of the United States and foreign countries, and for this reason the legislature of Indiana cannot levy a tax called a license, income, property or excise tax; and that appellant is exempt from all taxes by reason of the exemption contained in the Gross Income Tax Act of Indiana.

It is provided in section 6-a of the Act (Acts 1933, ch. 50, p. 392) that:

"There shall be excepted from the gross income taxable under this act:

"(a) So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America . . ."

Whether the appellant was engaged in interstate commerce depends upon the evidence, and we are unable to find any evidence in the record to sustain this contention of appellant. A contract between the appellant and the Chicago, Indianapolis, and Louisville Railway Company, dated December 17, 1914, was introduced in evidence by the appellant. The contract shows that the appellant has a creosoting plant at Bloomington, Indiana, located near the tracks of the railway company, and it contracted to creosote ties and timber for the railway company; that the railway company was to furnish and maintain adequate railroad tracks to facilitate the loading and unloading of its ties and other material; that the railway company was to deliver to the creosoting company for treatment 3,000,000 ties at the

rate of 200,000 per annum unless the necessity of the railway required less in any one year; that the ties were to be delivered f. o. b. cars at the creosoting company's yard or stacked on the ground in the creosoting company's seasoning yard, and after treatment were to be delivered by the creosoting company f. o. b. at its yard. The contract further provided for the method of treatment, the quality of oil to be used and the price to be paid for the treatment; that the creosoting company should render the railway bills at the expiration of each month for all ties and timber treated during the previous month, and payment was to be made within twenty (20) days after receipt thereof.

There are many more provisions of the contract, but the foregoing are the essential ones for the purpose of this opinion.

It was alleged in the complaint of appellant that its principal office and place of business was in the city of Bloomington, Monroe county, Indiana, while the evidence shows that it was in Louisville, Kentucky, and the plant office in Bloomington. It is shown by the evidence that the book accounts were kept in Louisville; that the money received in payment of accounts was sent to the office in Louisville, and the bills for supplies and material were paid at the same place. All operating records were kept at the plant office in Bloomington.

There is a total lack of any statement or statements in the contract, or of any evidence in the record, to show that any shipment of ties was to be made outside of the State of Indiana. There is nothing contained in the contract or evidence which shows, or tends to show, that there was any interstate commerce involved in the transaction between the parties to the contract. On the contrary, the contract shows that the railway company was to deliver to the creosoting company three million cross-ties at the creosoting company's plant at Bloom-

ington for treatment, and after treatment the creosoting company was to deliver the ties to the railway company at Bloomington. The treatment of the ties by the creosoting company is the source of the receipt of the gross income for which it was taxed, and there is no evidence submitted in the record which shows, or tends to show, that any of the income was received from any transaction outside the State of Indiana. On the contrary all of the evidence shows that the business was done between the parties in Indiana, and all income received by the appellant from the railway company was for intrastate business done in Indiana. There is no evidence to show that any of the ties were received from outside of Indiana, nor that after treatment any of them were shipped outside of the state. We judicially know that the railway company extends through the State of Indiana from north to south, and we may infer, nothing to the contrary appearing, that the railway company had use for the treated ties on its road in Indiana.

It is stated in argument of appellant that the contract was negotiated in Illinois, and consummated in Kentucky. There is a total lack of evidence to substantiate this statement, but, even if it were true, this fact of itself would not constitute interstate commerce. As said in the case of *Ware & Leland* v. *Mobile County* (1908), 209 U. S. 405, 411, 28 S. Ct. R. 526.

> ". . . contracts between citizens of different states are not the subjects of interstate commerce, simply because they are negotiated between citizens of different States, or by the agent of a company in another State, where the contract itself is to be completed and carried out wholly within the borders of a State, although such contracts incidentally affect interstate trade."

The appellant cites many cases of the United States Supreme Court relative to interstate commerce; but, as

the evidence in the instant case shows that there was no interstate commerce involved, the cases are not in point, and are not controlling here.

In the case of *Penn. R. R.* v. *Clark Coal Company* (1915), 238 U. S. 456, pp. 465, 466, 35 S. Ct. R. 896, it said:

> "In determining whether commerce is interstate or intrastate, regard must be had to its essential character. Mere billing, or the place at which title passes, is not determinative. If actual movement is interstate, the power of Congress attaches to it, and the provisions of the Act to Regulate Commerce . . . apply."

And again, in the case of *Browning* v. *City of Waycross* (1914), 233 U. S. 16, 23, 34 S. Ct. R. 570, it is said:

> ". . . it was not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause."

In the case of *Superior Oil Co.* v. *Mississippi* (1930), 280 U. S. 390, 395, 50 S. Ct. R. 169, the court stated:

> "The importance of the commerce clause to the Union, of course, is very great. But it also is important to prevent that clause being used to deprive the States of their life blood by a strained interpretation of facts."

The evidence and the contract in the instant case clearly show that the work or service done by the appellant in creosoting the ties was exclusively a local and intrastate business, and not interstate; and, therefore, the appellant is not exempt from the Gross Income Act.

The appellant next contends that it is exempt from taxation because its intangibles at Bloomington had no situs for the purpose of taxation in the State of Indiana, and cites *Miami Coal Co.* v. *Fox* (1932), 203 Ind. 99, 176 N. E. 11, to sustain its contention.

The foregoing case does not sustain appellant's contention, and is not applicable to the facts in the instant case. In the above case, it appears that the Miami Coal Co. was an Indiana corporation, engaged in the mining, production, and sale of coal; that the company was licensed by the State of Illinois to transact business in that state as a foreign corporation; that for many years the company engaged in the mining, production, and sale of coal; that on March 1, 1923, the coal company owned intangible personal property, consisting of bills and accounts receivable, over and above all legal deductions, of the cash value of $1,060,565, and the company was assessed in Vermillion county for said amount. It further appears from the facts in said case that all sales of coal were made in its office in Chicago where all the books of account were kept in which were made the entries for the sale of coal, and where all accounts were due and payable; that the corporation never had an agent or office in Indiana authorized to sell coal or collect accounts; that the price of the coal was fixed in the office in Chicago; that no funds of the corporation entered Indiana except money for the payment of the miners' payroll; that all bills for supplies and material were paid at the office in Chicago, and all salaries of the officers and dividends to the owners of the capital stock were paid at the Chicago office.

It was held that, under the facts as presented in the foregoing case, the property in question, which was the foundation of the assessment, had a business situs in the State of Illinois, and was not subject to taxation in Indiana. Moreover, the question involved related to a tax upon intangibles as property. In the instant case, we are considering a tax upon the receipt of gross income as provided in the Gross Income Tax Act of 1933, and there is no attempt to tax an intangible. The gross income tax is an excise tax, and is measured by the

receipt of gross income. In the case of *Miles* v. *Department of Treasury* (1935), 209 Ind. 172, 199 N. E. 372, the court, in considering the Gross Income Tax Act, said (p. 188):

> "We conclude that the tax in question is an excise, levied upon those domiciled within the state or who derive income from sources within the state, upon the basis of the privilege of domicile, or the privilege of transacting business within the state, and the burden may reasonably be measured by the amount of the income. The reasoning which justifies a tax upon the basis of domicile as readily supports and justifies a tax upon the basis of the right to receive income within, or transact business under the protection of the state."

As there is no attempt in the instant case to tax intangibles as property, the case of *Miami Coal Co.* v. *Fox* is not applicable.

It is next insisted (1) that the appellant is engaged in manufacturing, compounding, and preparing for sale articles at its plant at Bloomington, Indiana, and, therefore, is exempt from taxation, but (2) if taxable at all upon its income derived from its business at Bloomington it would be at the rate of one-quarter of one per cent of its gross income instead of one per cent.

If the appellant is doing the very thing it asserts in subdivision (1) as stated above, then it is brought squarely within section 3-a, and could not be exempt, for it is specifically stated in said section that:

> "The tax hereby provided for shall be imposed at the following rates: (a) Upon the entire gross income of every person engaged in the business of manufacturing, compounding, or preparing for sale, profit, or use, any article or articles, substance or substances, commodity or commodities . . . one-fourth of one percent."

And the appellant voluntarily made its report to the Department of Treasury, and paid taxes at the rate of

one-fourth of one per cent, but the Department, not being satisfied, increased the rate to one per cent, as imposed by section 3-f, and this action is to recover all the taxes paid. The appellant recognized, accepting its status as defined by it, as being liable to a tax of one-fourth of one per cent. It seems to us that proposition IV of appellant's is inconsistent and contradictory.

The last question to be considered is whether the appellant, under the facts as presented, is engaged in manufacturing, compounding, and preparing for sale articles at its plant at Bloomington. We unhesitatingly hold that it is not.

The process of creosoting the ties cannot in any sense be considered manufacturing. Could it be said that one who paints buggies and wagons after all parts have been made and assembled is engaged in the manufacturing business? We think not. The injection of oil into the ties is no different than the painting of a buggy, wagon, or house. All is done for the preservation of the material. The oil is supposed to preserve the ties, and the paint is to preserve the wagons, buggies, or houses. The process by which it is done, whether by machinery or labor, is not manufacturing, but merely service, or labor, in doing the work. Under no definition of any dictionary that we are able to find is the word manufacture, or manufacturing, defined to include the work done by appellant. And, in the case of *State* v. *American Creosoting Works* (1927), 163 La. 547, 112 So. 412, cited by appellant, the word "manufacturer" is defined, and it certainly would not bring the appellant within its meaning. It is said (p. 550):

> " 'A manufacturer is defined to be: One who is engaged in the business of working raw materials into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance for

use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw materials.' " ·

The foregoing case is clearly distinguishable from the instant case, as shown by the facts stated in the opinion. The court said:

"In conducting its operations, the defendant company receives at its plant rough timber and lumber. The inner bark is peeled off the timber, and the knots are smoothed down. It is then cut into lengths for piling. Telephone and telegraph poles are made by forming a roof, either slanting or pointed, in which notches are cut to hold the cross-arms, and holes are bored for the insertion of bolts. The rough lumber is cut to size, mortized for splicing, and trimmed. The resulting product is used for bridge and highway timber. Rough lumber is also planed and smoothed, cut to size, with holes for bolts, for use as cross-arms for telegraph or telephone poles. Wooden paving blocks are made by special machinery, and cut to size as ordered by various municipalities. Cross-ties are adzed to afford an even surface for the plates. The plant also turns out car bumpers, factoring flooring, and what is known as 'Martinez' sheet piling, a patented article."

Then, after all the foregoing work was done, the finished product was impregnated with creosote oil by an intricate mechanical process. Taking all the facts above enumerated into consideration, the court held that the process was a manufacturing one. In the instant case, however, nothing whatever is done to the ties but the injection of the creosote oil, and this certainly cannot amount to a manufacturing process.

Neither do we think the business of the appellant comes within the terms of "compounding or preparing for sale, profit, or use." The word "compound" is used in the sense to put together, as elements, ingredients, or parts, in order to form a whole; to combine, mix, or unite. Webster's New International Dictionary. If we

were to consider the word "prepare" alone and unconnected with the words "manufacturing" and "compounding" there might be some reason for the appellant's construction of this part of Section 3-a. We think, however, that all of the language must be construed together to determine the meaning of Section 3-a. The meaning of a word used in a statute must be construed with reference to all other words used therein and with which it is associated. It is a rule of statutory construction that effect must be given to the whole statute and every part thereof. *State ex rel. Hopper* v. *Board of Comm.* (1925), 196 Ind. 472, 149 N. E. 69. We think the words "manufactured," "compounded," and "prepared," as used in the statute must be construed in connection with each other. They are all qualified by the words "for sale, profit or use" and form a classification as being taxable at one-fourth of one per cent. We do not think that the appellant's business comes within the meaning of the words "engaged in the business of manufacturing, compounding or preparing for sale, profit or use any article . . ." so that the gross income would be taxed at one-fourth of one per cent. The work done in creosoting the ties is nothing more than a service rendered for the purpose of preserving them and can not be placed in the classification of manufacturing, compounding, or preparing for sale, profit, or use of any article any more than could the painting of a house, buggy, or wagon. The service of all is for the same purpose—preservation of the material, the only difference being the method of the work and the material used.

It is our judgment that the appellant is properly taxed under Section 3-f upon its gross income at the rate of one per cent.

The judgment of the lower court is sustained by sufficient evidence and is not contrary to law.

Judgment affirmed.