DEPARTMENT OF TREASURY OF INDIANA ᴇᴛ ᴀʟ.
*v.* WOOD PRESERVING CORPORATION.

No. 654.  Argued April 1, 1941.—Decided April 28, 1941.

*Messrs. Joseph P. McNamara* and *Joseph W. Hutchinson,* Deputy Attorneys General of Indiana, with whom *Mr. George N. Beamer,* Attorney General, was on the brief, for petitioners.

*Mr. Harry T. Ice,* with whom *Messrs. Frederick E. Matson* and *Carleton M. Crick* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This suit was brought by respondent, The Wood Preserving Corporation, to recover taxes collected from it by the Department of Treasury of the State of Indiana under the Indiana Gross Income Tax Act of 1933. The District Court denied recovery and its judgment was reversed by the Circuit Court of Appeals upon the ground that the taxes were invalid under the Federal Constitution as laid upon income received outside the State and as constituting an unlawful burden upon interstate commerce. 114 F. 2d 922. In view of the asserted conflict with applicable decisions of this Court, certiorari was granted, 312 U. S. 670.

The facts were found in accordance with the stipulation of the parties. Respondent is a Delaware corporation with its principal place of business at Pittsburgh, Pennsylvania. It is qualified to do business in Indiana but has no agents or employees within that State except as specified. Respondent is engaged in the business of treating railroad ties by creosoting them and also in the business of purchasing and selling ties. It does not, however, sell ties save to those with whom it has a contract for treatment.

The taxes in question were for the years 1934, 1935, and 1936. The taxes were laid upon respondent's gross receipts from the sale of ties to the Baltimore and Ohio

Railroad Company in accordance with certain contracts. One contract required the Railroad Company to deliver for treatment 600,000 ties annually to a treatment plant at Finney, Ohio, belonging (through a subsidiary) to respondent. The other provided for the sale of raw ties to the Railroad Company, delivered f. o. b. cars on the railroad tracks; also for treatment of ties at another plant to be operated by respondent (under lease from the Railroad Company) in West Virginia. A supplemental agreement required respondent to ship all ties delivered to the railroad in territory west of the Ohio River, including Indiana, to the plant at Finney, Ohio, for treatment. Respondent sold to the Railroad Company no ties that were not to be treated at one or the other of its plants before use.

The course of business, so far as material here, was as follows: Respondent itself produced no ties in Indiana. Requisitions for ties were issued from the Railroad Company's office in Baltimore and were accepted at respondent's office in Marietta, Ohio, by telephone or mail. Respondent then procured the ties from local producers in Indiana through communications by telephone or mail from its Marietta office. The Indiana vendors delivered the ties at loading points on the railroad in Indiana. When the ties were ready, an inspector for the Railroad Company and respondent's agent met at the loading point in Indiana, and as the ties were examined with respect to compliance with specifications, those accepted by the railroad inspector were loaded on freight cars furnished by the Railroad Company at the loading point. The inspection and loading were simultaneous. Respondent paid the Indiana producers only for ties which were thus accepted. Respondent's agent made out bills of lading with respondent as consignor and the Railroad Company's Chief Engineer of Maintenance at Finney, Ohio, as consignee, and the ties were

carried to Finney, Ohio, for treatment. Respondent paid no freight to the Railroad Company for that transportation. Respondent's office at Marietta m a i l e d weekly invoices to the Railroad Company at its Baltimore office for the ties sold and delivered to the Railroad Company and monthly reports of such invoices were made to respondent's main office at Pittsburgh. All payments for ties were made to respondent's Pittsburgh office and were there deposited in bank.

The taxes in question were laid by the Indiana authorities on the receipts which respondent derived from the sale of the untreated ties. These receipts did not include charges for the creosoting treatment; those charges were separately billed by respondent's subsidiary when the treatment was completed.

Section 2 of the Indiana Taxing Act of 1933, the text of which is set forth in the margin,[1] provides for a tax upon gross income "derived from sources within the State of Indiana" of all nonresident persons and corporations. The court below has held that under this statute the

---

[1] Section 2 of Chapter 50 of the Acts of 1933 of Indiana is as follows:

"Sec. 2. There is hereby imposed a tax, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the entire gross income of all residents of the State of Indiana, and upon the gross income derived from sources within the State of Indiana, of all persons and/or companies, including banks, who are not residents of the State of Indiana, but are engaged in business in this state, or who derive gross income from sources within this state, and shall be in addition to all other taxes now or hereafter imposed with respect to particular occupations and/or activities. Said tax shall apply to, and shall be levied and collected upon, all gross incomes received on or after the first day of May, 1933, with such exceptions and limitations as may be hereinafter provided." 11 Burns Indiana Statutes, § 64-2602.

thing taxed was "the receipt of gross income" and as the income in question was received by respondent in Pennsylvania, it was beyond the jurisdiction of Indiana; that, if the contrary theory of the taxing officials was sound, still the tax was invalid because no method was provided for allocating the tax to the income derived from that part of the business transacted within Indiana; and, further, that the transactions in question "were had in interstate commerce," that the tax discriminated against that commerce and for that reason was void.

We think that the court was in error in each of these conclusions.

As to the first point, the court relied upon our decision in *Adams Manufacturing Co.* v. *Storen,* 304 U. S. 307. That was a case under the same taxing act of Indiana, but there the tax was applied to gross receipts derived by an Indiana corporation from sales in other States of goods manufactured in Indiana. We observed that the tax is not an excise for the privilege of domicile "since it is levied upon the gross income of nonresidents from sources within the State." The point of the decision was that "the tax is what it purports to be,—a tax upon gross receipts from commerce," and that the tax was there laid upon receipts from sales to customers in other States and abroad which constituted interstate and foreign commerce. *Id.,* pp. 310, 311.

The present question is as to the validity of the tax upon receipts "derived from sources within the State," [2] that is, under § 2 of the Act, from activities which petitioners insist were intrastate. If petitioners are right in this contention there can be no doubt that Indiana had authority to lay the tax. *Underwood Typewriter*

---

[2] See *Miles* v. *Department of Treasury,* 209 Ind. 172, 188; 199 N. E. 372; *Indiana Creosoting Co.* v. *McNutt,* 210 Ind. 656, 663, 664; 5 N. E. 2d 310.

*Co.* v. *Chamberlain,* 254 U. S. 113, 120, 121; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 648, 649; *National Leather Co.* v. *Massachusetts,* 277 U. S. 413, 423; *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, 134; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 149, 161; *Dravo Contracting Co.* v. *James,* 114 F. 2d 242, 247. Compare *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435. In that view, it cannot be said that respondent had a constitutional right to escape that burden by arranging to have the proceeds of its intrastate transactions paid to it in another State. *Underwood Typewriter Co.* v. *Chamberlain, supra,* p. 120; *Continental Assurance Co.* v. *Tennessee,* 311 U. S. 5.

Further, as the sole subject of the challenged tax is the income derived from respondent's sales to the Railroad Company there is no occasion for apportionment. The creosoting operations in Ohio, and the income derived from them, were not involved. And the fact that the ties which were sold to the Railroad Company were purchased by respondent through orders given to the Indiana producers from respondent's Marietta office cannot affect the authority of Indiana to tax the receipts from intrastate activities of respondent in its dealings with the Railroad Company. *Woodruff* v. *Parham,* 8 Wall. 123, 140; *Banker Brothers* v. *Pennsylvania,* 222 U. S. 210; *Wiloil Corporation* v. *Pennsylvania,* 294 U. S. 169, 175.

As to these dealings, it appears that respondent received in Indiana the ties it purchased from the local producers and that respondent sold and delivered these ties in Indiana to the Railroad Company. The fact that the delivery by the producers to respondent and respondent's delivery to the Railroad Company took place at the same time is not important. Respondent was in Indiana acting through its agent at the designated points on the

railroad line. The Railroad Company was at the same points represented by its inspector. The ties brought there by the producers were then examined and those found by the inspector to be in accordance with specifications were accepted. In these transactions, respondent through its agent at once accepted from its vendors the ties which the Railroad Company found satisfactory and then and there sold and delivered these ties to the Railroad Company. These were local transactions,—sales and deliveries of particular ties by respondent to the Railroad Company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the Railroad Company at the Ohio plant, and the ties bought by the Railroad Company in Indiana, as above stated, were transported and delivered by the Railroad Company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence in the light of the facts showing the completed delivery to the Railroad Company in Indiana. See *Superior Oil Co.* v. *Mississippi,* 280 U. S. 390.

We find no ground for saying that in taxing the receipts from these local transactions Indiana has exceeded its constitutional authority by taxing interstate commerce or discriminating against it.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*