INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME
TAX DIVISION *v.* SOHIO PETROLEUM COMPANY.

[No. 1-1075A190.  Filed July 27, 1976.]

*Theodore L. Sendak,* Attorney General, *James N. Shumacker,* Deputy Attorney General, for appellant.

*Richard E. Deer, Daniel H. Fitzgibbon, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, *J. Lloyd Fitzpatrick, Fitzpatrick, Chambers & Waller,* of Washington, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—Defendant-appellant Indiana Department of Revenue (Department) notified the predecessors in interest of plaintiff-appellee Sohio Petroleum Company (Sohio), a Delaware corporation, of a proposed assessment of unpaid gross income tax, penalties, and interest for the calendar years 1970 and 1971. The assessment was paid after the Department denied a protest of the assessment. Following the Department's denial of a claim for a refund, the predecessors of Sohio initiated this action against the Department to recover alleged overpayments of gross income tax, penalties and interest. The trial court granted Sohio a refund of $51,864.96.

We affirm in part and reverse in part.

## FACTS

Sohio's predecessors in interest were Old Ben Coal Corporation, Old Ben Coal, Inc., and Kings Station Coal Corporation (collectively, the taxpayers).

Old Ben Coal Corporation (parent corporation) was a Delaware corporation operating from its principal executive office in Chicago, Illinois. It owned all of the common stock of Old Ben Coal, Inc., (Old Ben) which in turn owned all of the common stock of Kings Station Coal Corporation (Kings Mine).

Old Ben and Kings Mine both were Indiana corporations with their production facilities (coal mines) located in Southern Indiana. However, the management of both was concentrated in the Chicago office of the parent corporation.

Since the parent corporation in 1970 had first qualified to do business in Indiana, which business made it subject to the Gross Income Tax Act of 1933 (the Act),[1] Thomas J. O'Grady, who was an officer of each of the taxpayers, on June 19, 1971, contacted the Department to inquire whether the taxpayers could file a consolidated return under the Act. A man identifying himself as having responsibility in the area of gross income tax assured O'Grady that a consolidated return would be proper for the taxpayers.

Thereafter the taxpayers filed a consolidated annual return for 1970 and received a refund from the Department. The taxpayers later filed a consolidated annual return for 1971, to which the Department responded with an audit and eventually the notice of assessment.

Old Ben received from Kings Mine dividends of $600,000 in 1970 and $1,400,000 in 1971, which dividends were not reported as gross income on the consolidated returns filed by the taxpayers for 1970 and 1971.

Old Ben also owned one-half of the common stock of Algers,

---

1. IC 1971, 6-2-1-1 through 6-2-1-53 (Burns Code Ed.).

Winslow and Western Railroad (AWW), an Indiana corporation operating in Southern Indiana. Old Ben received from AWW dividends of $50,000 in 1970 and $112,500 in 1971, which dividends were not reported as gross income on the consolidated returns filed by the taxpayers for 1970 and 1971. The AWW stock certificates that were owned by Old Ben were kept at the taxpayers' administrative headquarters in Chicago.

## ISSUES:

The parties raise the following issues:

1. Whether the taxpayers properly filed their consolidated returns for 1970 and 1971.

2. Whether the dividends distributed from AWW to Old Ben in 1970 and 1971 were subject to the gross income tax.

3. Whether the penalties imposed by the Department were proper.

4. Whether the trial court's finding that the taxpayers overpaid the Department by $51,864.96 and its judgment in that amount were clearly erroneous.

## DECISION

ISSUE ONE:

The trial court adopted the taxpayers' position that they correctly did not report as gross income the dividends paid by Kings Mine to Old Ben because they had filed consolidated returns for 1970 and 1971, in compliance with IC 1971, 6-2-1-14(a) (Burns Code Ed.):

"Under regulations prescribed by the department, corporations which are affiliated as provided herein shall have the *privilege of making a consolidated return,* as hereinafter provided. Corporations will be deemed to be affiliated within the meaning of this section if at least eighty per cent . . . of the voting stock of one . . . corporation (exclusive of directors' qualifying shares) shall be owned by the other corporation. Every corporation affiliated with another corporation, as defined above, shall be deemed to be affiliated with every corporation which is affiliated with such corpora-

tion. All corporations thus affiliated will be deemed to constitute an affiliated group. In case an election is made to file a consolidated return, such return shall include only the gross income of such members of the affiliated group as are incorporated in the state of Indiana or duly authorized to do business therein. The affiliated group will be allowed only one . . . exemption upon a consolidated return. . . . *In such consolidated return there may be eliminated from the gross income* only that portion which is received from sales of property between such members as are incorporated in the state of Indiana or duly authorized to do business therein, and also interest, rentals and *dividends paid by one . . . such corporate member to another*: Provided, however, That no such sales made, or other income earned, outside of the state of Indiana may be eliminated under this section: Provided, further, That gross receipts of any member of the affiliated group which are received in distribution in connection with the dissolution of any other member of the group shall not be permitted to be eliminated: Provided, further, That each and every member of any affiliated group which is incorporated in the state of Indiana or duly authorized to do business therein shall be jointly and severally liable for any tax imposed hereunder upon the group and each individual corporation member thereof. *An affiliated group must elect at the time of filing its first annual return under this act . . . whether or not it will file a consolidated return* or whether each member of the affiliated group shall file separate returns. Thereafter all returns will be required to be filed upon the same basis used in the return above mentioned, unless, in accordance with regulations of the department, permission is granted by the department to change the method of making returns from a consolidated to an individual basis or from an individual to a consolidated basis. . . ." (Our emphasis.)

The facts of the case at bar show that once the parent corporation first became subject to the Indiana gross income tax in 1970, there came into existence a new "affiliated group" consisting of the parent corporation, Old Ben, and Kings Mine. The taxpayers complied with the Act by electing to file a consolidated return at the time of filing the first annual return for the affiliated group, the return for 1970. Therefore the Act allows them to "eliminate" from gross income the dividends paid to Old Ben by Kings Mine.

The Department's contention since its notice of the assessment has been that the taxpayers did not have the "privilege" of utilizing the consolidated return format because they had failed to secure the Department's *permission* to file a consolidated return before filing their first *quarterly return* in 1970, as required by Regulation 800 of the Department's *Gross Income Tax Regulations,* which states:

> "When any group of corporations, affiliated as set out in Instruction 8-1, desires to file tax returns on the consolidated basis, an election to submit such returns must first be filed with, and permission received from, the Department before filing the first quarterly return for that year, or before filing the annual return for such year wherein no prior quarterly return has been filed. . . ."

It is well settled that we should accord great weight to long-standing interpretations of a statute by an agency charged with administering the statute; but our Supreme Court also established in *Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415, that the Department has no statutory authority to make regulations that add or detract from the law as enacted or that extend the powers of the Department beyond those conferred upon it by law.

Regulation 800 adds to the requirements of IC 1971, 6-2-1-14(a), quoted above, in that the administrative rule dictates that an affiliated group must take action to use a consolidated return at an earlier time than that set in the statute. The Department's own rule also extends its power beyond that granted in the statute. Regulation 800 requires an affiliated group to obtain the Department's permission to file a consolidated return in the first year of the group's existence whereas the statute empowers the Department to require prior permission only when an affiliated group, the members of which filed separate returns while the group was in existence, seeks to switch to the consolidated return format.

The portion of the statute from which the Department de-

rives its authority to promulgate regulations governing consolidated returns also makes it clear that Regulation 800 lacks statutory authority to the extent, as detailed above, that it exceed the limits of IC 1971, 6-2-1-14(a), which states:

"The department shall make such regulations as are deemed necessary or advisable to govern consolidated returns, *and all consolidated returns filed in accordance herewith shall be deemed to have been filed under and subject to, the terms and conditions of, such regulations. . . .*" (Our emphasis.)

Inasmuch as affiliated groups that file consolidated returns are subjected by statute to some disadvantageous gross income tax provisions as well as the elimination of intragroup dividends, we must adhere to the usual precept of construing a tax statute in favor of the taxpayer. *Gross Income Tax Division* v. *L.S. Ayres and Co.* (1954), 233 Ind. 194, 118 N.E.2d 480; *Gross Income Tax Division* v. *National Bank and Trust Co.* (1948), 226 Ind. 293, 79 N.E.2d 651. Looking at the statute in its entirety, it is obviously not an "exemption" which would mandate us to construe it against the taxpayer claiming the exemption. *Madding* v. *Indiana Department of Revenue* (1971), 149 Ind. App. 74, 270 N.E.2d 771.

We therefore conclude that the trial court correctly ruled that the taxpayers properly filed consolidated returns for 1970 and 1971, whereby the taxpayers eliminated the dividends distributed in those years to Old Ben by Kings Mine from the reach of the gross income tax.

We need not examine the trial court's alternative grounds for its decision.

ISSUE TWO:

The trial court also adopted the taxpayers' claim that Indiana cannot tax as gross income the dividends paid to Old Ben by AWW—both Indiana corporations—because the AWW stock certificates were located at the taxpayers' executive office in Chicago.

Indiana imposes a tax on the receipt of the entire gross income—measured by the amount or volume of gross income—of all residents and/or domiciliaries of Indiana. IC 1971, 6-2-1-2 (Burns Code Ed.). Old Ben, an Indiana corporation, is a resident of the state of its incorporation and is subject to the taxing powers of Indiana. *Indiana Department of Revenue* v. *Frank Purcell Walnut Lumber Co., Inc.* (1972), 152 Ind. App. 122, 282 N.E.2d 336.

The taxpayers' possible escape from the gross income tax on the dividends distributed by AWW to Old Ben would be one of the exemptions in IC 1971, 6-2-1-1(m) (Burns Code Ed.), to-wit:

> "[*W*]*ith respect to* individuals resident in Indiana and *corporations incorporated under the laws of Indiana authorized to do and doing business in any other state* and/or foreign country, *the term 'gross income' shall not include gross receipts received from sources outside the state of Indiana in cases where such gross receipts are received from a trade or business situated and regularly carried on at a legal situs outside the state of Indiana, or from activities incident thereto. . . .*" (Our emphasis.)

Judge Buchanan succinctly identified the essence of this provision in *Frank Purcell Walnut Lumber Co.*, at 152 Ind. App. 128,

> "To qualify for exemption the corporation must be incorporated under the laws of Indiana, doing business in another state, and it must derive income from sources also outside the State of Indiana."

Although the Frank Purcell Walnut Lumber Co. was an Indiana corporation with both its production and management located in another state, this court held that its income received from another Indiana corporation was subject to the gross income tax. The court discussed the critical term "sources" at 152 Ind. App. 128-129:

> "Our interpretation of Section 1(m) is that gross income of an Indiana corporation which conducts its business outside this state does not include income *received* from a customer located outside of Indiana. If the term 'sources' is

construed to mean the situs at which the seller's business is being conducted the statute must be distorted to interpret 'sources' to mean the situs at which the seller's business is being conducted. Such an interpretation ignores the first three lines of § 1(m), which create a category of taxpayers consisting of Indiana corporations 'authorized to do and doing business in any other state.' The remainder of that sentence goes on to describe their exempt income as being gross receipts received from a trade or business situated at a situs outside Indiana. Attributing to these words their plain and ordinary meaning we must conclude that 'sources' means customers or buyers.

"To countenance Purcell's interpretation is to allow every Indiana corporation having its main office or plant outside the State of Indiana an exemption from Indiana gross income tax on the theory that its income was derived from a source outside Indiana, even though goods were sold to a customer residing within our state. We must assume that the legislature intended to adopt a meaningful statute and not an absurdity. . . .

"Although the details of the sale from Purcell to Amos were concluded in the State of Kansas, the sale was made by an Indiana corporation to an Indiana corporation with delivery in Indiana.

"Section 1(m) requires that the source of income be from outside the state to be exempt from tax. Since the income in question was not received by Purcell from a source outside the State of Indiana, the § 1(m) exclusion from gross income does not apply." (Original emphasis; citation omitted.)

The taxpayers rely on *Miami Coal Company* v. *Fox* (1931), 203 Ind. 99, 176 N.E. 11, 79 A.L.R. 333, and Instructions 3-11 and 3-12 of the Department's *Gross Income Tax Regulations.*

In *Miami Coal Company* our Supreme Court held—on facts strikingly similar to the ones in the instant case—that certain intangibles were so intertwined with and affixed to the coal company's Chicago executive office that they had their "business situs" there. The court reasoned that the intangibles therefore came within the operation of the concept that Indiana could not impose its *personal property tax* upon the value of personalty situated outside the state.

Our Supreme Court in *Indiana Creosoting Company* v. *McNutt* (1936), 210 Ind. 656, 5 N.E.2d 310, recognized that the *Miami Coal Company* rationale had no application in a gross income tax case. The court based its decision on the nature of the gross income tax which is an excise tax levied upon those domiciled within the state who exercise the privilege of transacting business within and under the protection of the state.

Thus, the cases of *Frank Purcell Walnut Lumber Co.*, and *Indiana Creosoting Company*, establish that the critical issue in this gross income tax case is whether income came to the recipient, an Indiana corporation, from a person or entity within Indiana; the fact that the property producing the gross income was located at the principal place of the taxpayers' business situated outside the state is irrelevant for gross income tax purposes.

However, the Department managed to muddy the waters with its Instructions 3-11 and 3-12, which engrafted the *Miami Coal Company* business situs rule for the personal property tax onto the gross income tax. Instruction 3-12 purports to exempt from the gross income tax dividends on stocks which have a legal situs outside of Indiana and then refers to Instruction 3-11 which defines that class of stock as that "carried and handled as an integral part of any [Indiana resident and/or domiciliary's] business regularly conducted at his legal situs outside of Indiana."

Our Supreme Court in *Baker* v. *Compton* (1965), 247 Ind. 39, 211 N.E.2d 162, noted that an incorrect interpretation of a statute by an agency charged with administering the statute is not binding on an appellate court despite the axiom that such a court should give great weight to such an interpretation. And the Department lacks statutory authority to establish rules that add or detract from the Act. *Colpaert Realty Company, supra.*

It is the location of the corporation which pays dividends on

stock held by an Indiana corporation at its out-of-state principal place of business that determines whether the dividends constitute taxable gross income to the recipient. Therefore we refuse to apply the portions of Instructions 3-11 and 3-12 which indicate that it is the location of the stock that controls.

Inasmuch as the dividends paid by AWW to Old Ben were income flowing from one Indiana corporation to another we conclude that the dividends were subject to the gross income tax regardless of the situs of the shares upon which AWW paid the dividends. To hold otherwise would allow an Indiana corporation to avoid the effect of the Act by arranging to have the proceeds of its transactions with another Indiana corporation paid to it in another state, a tactic rejected by the United States Supreme Court in *Department of Treasury* v. *Wood Preserving Company* (1940), 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188.

We therefore conclude that the trial court was in error in granting the taxpayers a refund of the tax, penalty, and interest attributable to the taxation of the dividends paid to Old Ben by AWW.

ISSUE THREE:

The question here is whether the Department properly imposed on the taxpayers penalties for nonpayment of the gross income tax. The trial court ordered a refund of the penalties.

Inasmuch as the dividends distributed to Old Ben by Kings Mine were not subject to the gross income tax, any penalty placed on the taxpayers for not paying the gross income tax on those dividends was improper.

But this conclusion does not extend to the penalty levied on the taxpayers for not paying the gross income tax on the dividends received by Old Ben from AWW inasmuch as those dividends *were* subject to the gross income tax.

The taxpayers quibble about which provision of the Act was used by the Department as the basis for the penalties assessed by it. One section, IC 1971, 6-2-1-16(d) (Burns Code Ed.), empowers the Department to impose a penalty of ten percent of the deficiency "[i]f any part or all of the deficiency is due to negligence or intentional disregard of this act . . . or of authorized rules or regulations. . . . A penalty of ten percent of the tax that is not paid on time is authorized by IC 1971, 6-2-1-16(f) (Burns Code Ed.).

The taxpayers claim that the Department initially based the penalties in this case on subsection (d). They argue that the penalties are therefore improper because their conduct did not constitute "negligence or intentional disregard" of the Act or of the Department's rules. And they further contend that the Department can not now switch to subsection (f) as the basis for the penalties.

However, the record indicates that it is in fact the taxpayers who are attempting to switch subsections on appeal.

Counsel for the taxpayers introduced into evidence a document entitled "Breakdown of $54,924.40 Refund Claimed", the first two columns of which are labeled "Tax" and "Penalty." The figures in the penalty column are ten percent of the amounts under the tax hearing.

Inasmuch as the taxpayers' own exhibit shows that at trial they considered the penalties to be ten percent of the allegedly unpaid gross income tax—the provision in subsection (f)—they cannot on appeal for the first time assert their challenge to that subsection as the basis for the penalties.

It is uncontroverted that the taxpayers failed to pay within the time set by the Act the gross income tax due on the dividends received by Old Ben from AWW. Therefore we conclude that the Department properly imposed a ten percent penalty on that unpaid tax and that the trial court was in error in ordering a refund thereof.

ISSUE FOUR:

The Department challenges the trial court's decision as being contrary to the law and being not supported by sufficient evidence.

On an appeal from a trial to the court, we must uphold the trial court's findings and judgment unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52 (A). We will find them to be clearly erroneous only where —although there may be evidence to support them— a review of the entire record leaves us with a definite and firm conviction that a mistake was made. *Citizens Gas and Coke Utility* v. *Wells* (1971), 150 Ind. App. 78, 275 N.E.2d 323.

For the reasons stated above we reverse the portion of the trial court's order granting the taxpayers a refund of gross income tax, penalty, and interest attributable to the taxation of the dividends distributed to Old Ben by AWW.

We hereby affirm the rest of the trial court's judgment and remand this cause to the trial court with instructions to amend its judgment in conformity with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 95.