## INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant Below),

v.

## GENERAL FOODS CORPORATION, Appellee (Plaintiff Below).

No. 2–1180A388.

Court of Appeals of Indiana, Second District.

July 2, 1981.

Publication Ordered Oct. 14, 1981.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for appellant.

Leonard J. Betley, Barton T. Sprunger, Indianapolis, for appellee General Foods Corp.

Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellant-defendant Indiana Department of State Revenue (Department) appeals from a trial court judgment that the Department wrongfully collected gross income tax on out-of-state shipments to Indiana customers of plaintiff-appellee General Foods Corporation (GFC).

We affirm.

## FACTS

The following facts as specifically determined by the trial court under Ind.Rules of Procedure, Trial Rule 52(A), are not disputed.

*Findings of Fact*

1. The plaintiff, General Foods Corporation ("General Foods"), is a Delaware corporation, qualified to do business in the State of Indiana, and has its principal office located at 250 North Street, White Plains, New York.

2. The Defendant, Indiana Department of State Revenue ("Department"), is an agency of the State of Indiana and administers the Gross Income Tax Act of 1933, as amended, I.C. 6–2–1–1 *et seq.*

3. At all relevant times General Foods has been engaged in the manufacture and marketing of a comprehensive range of food and food products, primarily selling to grocery chains, wholesalers, institutional users, and jobbers. At all relevant times General Foods' production and sales operations have been conducted through different divisions, established primarily according to the type of product involved. At all relevant times prior to April, 1973, General Foods' production and sales operations were conducted through its Maxwell House, Birds Eye, Jell-O, Kool-Aid, Post, and Institutional Food Service Divisions. Effective April, 1973, the divisions were reorganized as the Maxwell House,

Food Products, Beverage and Breakfast Foods, Pet Foods, and Institutional Food Service Divisions. Effective October, 1976, the name of the Institutional Food Service Division was changed to Food Service Products Division.

4. Each of General Foods' operating divisions had its own sales force and sales responsibility for its products, with the exception of the Pet Foods Division, which utilized the sales staff of the Beverage and Breakfast Foods Division. Each marketing organization is geographically divided into regions which in turn are divided into districts. Offices are maintained by General Foods both at the region and district levels. With the exception of a sales office in Indianapolis which was closed on June 7, 1971, none of the General Foods' Divisions' sales offices, whether at the region or district level, were located in Indiana during the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974.

5. After June 7, 1971, all of General Foods' Indiana customers were serviced by three district offices, located at Cincinnati, Ohio, Livonia, Michigan, and Northlake, Illinois. Each district office had responsibility for credit control, receipt, approval, and processing of orders, warehousing, shipping and invoicing, collecting and preparing sales and statistical analyses, and performing other data processing functions, none of which functions were performed at an Indiana office after June 7, 1971. Representatives of the three out-of-state district offices who made calls upon Indiana customers worked on a straight salary basis, had no authority with respect to customer credit approval or acceptance of orders, and had no inventory or offices located in Indiana. All purchase money paid to General Foods from orders which were accepted by the branch offices located outside of Indiana were paid to out-of-state offices of General Foods.

6. During the period in question General Foods also had a Distribution-Sales Service Division which provided certain sales and accounting functions, warehousing, and other services for various product divisions. During the period in question such Division maintained a warehouse located in Indianapolis, Indiana, which only made certain shipments to customers in central and northeastern Indiana. Shipments to all other portions of Indiana were made from distribution warehouses located outside of Indiana.

7. During the latter part of October, 1964, John P. Baker, Field Auditor for the Department audited General Foods for Indiana Gross income tax purposes for the years 1961 through 1963. For such years, and for prior periods, General Foods reported as exempt all sales to Indiana customers other than those which were made from an Indiana stock of goods. The Department treated all such sales as exempt both for the audit period and periods prior thereto, and did not assess General Foods with any additional gross income tax. During such period, and to the present, General Foods' activities in Indiana with respect to the sales and distribution of products to Indiana customers has remained substantially unchanged.

8. For each of the fiscal years ending April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, General Foods reported as subject to gross income tax, and paid tax on all sales to Indiana customers which were made from an Indiana stock of goods. Consistent with its reporting for all prior years, including its method of reporting for years which were previously audited by the Department (1961 through 1963). General Foods treated sales made by offices located outside of Indiana to customers located in Indiana, pursuant to orders which were accepted by General Foods out-of-state, filled from out-of-state inventory, and for which payment was made to out-of-state offices, as not subject to gross income tax.

9. For the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, the Department, following an audit completed on October 14,

1977, assessed General Foods with gross income tax on all amounts received from sales to Indiana customers made by offices of General Foods located outside of Indiana, pursuant to orders accepted by out-of-state offices and the goods were shipped to the Indiana customers from warehouses or factories located outside of Indiana, if the products sold were of the type which, from time to time and in varying quantities, were stored at the Indianapolis warehouse operated by General Foods' Distribution-Sales Service Division.

10. The Department did not treat sales of General Foods' Institutional Food Service Division or sales of frozen food lines which were never stored in the Indianapolis warehouse as subject to tax for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, though such sales were made in the same manner as the sales described in paragraph 9 hereof.

11. By checks dated December 16, 1977, and July 10, 1978, General Foods paid the entire deficiency attributable to the additional assessment of tax by the Department for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974.

12. On April 2, 1979, General Foods timely filed claims for refund with the Department for gross income tax in the amounts of $71,695.19, $68,565.06, $70,435.80, and $41,716.75 for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, respectively, representing tax collected by the Department from General Foods on amounts received from sales of the type set forth in paragraph 9 hereof, and additionally claimed interest as provided by law.

13. By letter dated April 23, 1979, signed by B. J. Weil, General Foods' claims for refund for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, were denied.

14. On May 30, 1979, less than three months after receiving notice from the Department of the denial of its claims for refund, General Foods filed the within action and served both the Attorney General and the Department with a summons and a copy of the complaint.

15. There is no genuine issue as to any material fact in the within action.

*Record* at 176–80. The Department only quarrels with these conclusions of law:

### Conclusions of Law

3. The Department wrongfully and illegally collected gross income tax from General Foods for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, on income received by General Foods at out-of-state offices, attributable to sales (hereinafter "Disputed Sales") made by offices of General Foods located outside of Indiana. Pursuant to orders solicited in Indiana by representatives of out-of-state offices, or upon orders sent directly to the out-of-state offices by Indiana customers, which orders were accepted by offices of General Foods located outside Indiana, and where the goods were shipped to Indiana customers from offices, warehouses, or factories located outside Indiana, in that income from such sales was not derived from activities, business or any other source within the State of Indiana within the meaning of I.C. 6–2–1–2.

4. The Department wrongfully and illegally collected gross income tax from General Foods for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, on income received by General Foods from the Disputed Sales under the authority of *Department of Treasury v. International Harvester Co.*, (1943) 221 Ind. 416, 447 [47], N.E.2d 150, *aff'd* 322 U.S. 340 [64 S.Ct. 1019, 88 L.Ed. 1313].

5. The Department wrongfully and illegally collected gross income tax from General Foods for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, on income received by General Foods from the Disputed Sales in that the same issue as in the present case was previously resolved by the Department in favor of General

Foods and the General Assembly has not seen fit to change the exemption and levying provisions of the Gross Income Tax Act as they relate to the Disputed Sales subsequent to such resolution. Under the doctrine of legislative acquiescence and the authority of *State v. Board of Tax Commissioners v. Carrier Corporation*, (1977) [266] Ind. [615], 365 N.E.2d 1385, rehearing denied, —— Ind. ——, 368 N.E.2d 1153, and *Whirlpool Corporation v. State Board of Tax Commissioners*, (1975) [167] Ind. [App. 216], 338 N.E.2d 501, the legislature is deemed to have acquiesced in the previous determination of the Department and such acquiescence is binding and controlling herein.

6. The income which General Foods received from the Disputed Sales was received from business conducted in commerce between the State of Indiana and other states of the United States which the State of Indiana is prohibited from taxing under the Indiana Gross Income Tax Act of 1933, as amended and the Commerce Clause and the Fourteenth Amendment of the Constitution of the United States.

7. The Department's imposition of gross income tax upon General Foods' income from the Disputed Sales is contrary to its past practices and the laws of the State of Indiana.

8. General Foods is entitled to a refund of gross income tax in the amounts of $71,695.19, $68,565.06, $70,435.80, and $41,716.75, for the fiscal years ended April 3, 1971, April 1, 1972, March 31, 1973, and March 30, 1974, respectively, plus interest as provided by law.

9. General Foods is entitled to a judgment in its favor as a matter of law.

10. Any Finding of Fact may be deemed a Conclusion of Law and any Conclusion of Law may be deemed a Finding of Fact.

*Record* at 180–182.

*ISSUE*—The only issue necessary to dispose of this appeal is:

Was the income which GFC earned from orders filled by out-of-state inventory taxable as gross income under Ind. Code § 6–2–1–2?

*PARTIES' CONTENTIONS*—The Department contends that the gross income tax is applicable to goods shipped from out-of-state warehouses to Indiana customers because like goods are sometimes shipped from Indiana warehouses to Indiana customers.

General Foods counters that the occasional shipment of goods from Indiana warehouses is incidental to its entire operation, so the gross income tax is inapplicable to goods shipped from out-of-state.

*CONCLUSION*—The gross income tax is inapplicable to goods shipped from out-of-state.

## DISCUSSION

I.C. § 6–2–1–2, which the Department says applies, reads:

There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by such application of rates on such gross income as hereinafter provided. *Such tax shall be levied* upon the receipt of the entire gross income of all persons resident and/or domiciled in the State of Indiana, except as herein otherwise provided; and *upon the receipt of gross income derived from activities or businesses or any other source within the State of Indiana, of all persons who are not residents of the State of Indiana* . . . . (Emphasis added).

In determining whether a taxing provision is applicable, all doubts are construed strongly against the Department, in favor of the taxpayer. *Indiana Department of State Revenue v. Convenient Industries of America, Inc.* (1973), 157 Ind. App. 179, 299 N.E.2d 641; *Gross Income Tax Division v. Klink* (1953), 232 Ind. 473, 112 N.E.2d 581; *Gross Income Tax Division v. Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50, *cert. den.*, 346 U.S. 829, 74 S.Ct. 51, 98 L.Ed. 353. And in ascertaining whether I.C. § 6–2–1–2 is applicable, the Department must show that

the activities within the State giving rise to the income, viewed as a whole, are more than minimal. *Indiana Department of State Revenue v. J. C. Penney Co.* (1980), Ind.App. 412 N.E.2d 1246, *trfr. den.*, (1981) Ind. (filed Apr. 20, 1981); *Indiana Department of State Revenue v. Convenient Industries of America, Inc., supra.*

■ We are unpersuaded that GFC's activities within the State of Indiana were more than minimal. GFC is a Delaware corporation with its principal office in New York. It is comprised of divisions which conduct largely distinct production and sales operations. All orders are accepted out-of-state, all credit approval is accomplished out-of-state, and all goods are shipped from out-of-state. Further, company representatives which do meet with customers in Indiana do not accept orders. Although one GFC sales office was operated within Indiana for a portion of the period in question, taxes were paid on sales made from that office, and conceding that some orders were filled from a warehouse within Indiana, GFC paid gross income taxes on those sales.

■ The Department claims that the gross income tax may be levied on goods shipped from out-of-state to Indiana customers if like goods are sometimes shipped from an Indiana warehouse to Indiana customers. That can hardly be true, for to fall within the ambit of I.C. § 6–2–1–2 "the derivation of the income must be attributable to *activities* within the State as opposed to the *person* from whom the income

is received." *Indiana Department of State Revenue v. Convenient Industries of America, Inc., supra,* 299 N.E.2d at 645 (emphasis added). *Accord, Indiana Department of State Revenue v. Frank Purcell Walnut Lumber Co.* (1972), 152 Ind.App. 122, 282 N.E.2d 336 (Indiana resident); *Indiana Department of State Revenue v. Sohio Petroleum Co.* (1976), 170 Ind.App. 123, 352 N.E.2d 95 (Indiana resident).

We thus conclude that these activities were merely incidental to GFC's total operation and were therefore insufficient for the Department to seize upon in attempting to apply I.C. § 6–2–1–2. In so concluding, we are in agreement with *Indiana Department of State Revenue v. J. C. Penney Co., supra* (direct mail catalog sales, when retail and warehouse facilities within Indiana, not taxable as gross income); and *Indiana Department of State Revenue v. Convenient Industries of America, Inc., supra* (service and advertising fees paid to Kentucky corporation by Indiana franchises not taxable as gross income).

Inasmuch as we have concluded that GFC's income does not fall within the scope of I.C. § 6–2–1–2, we do not reach the questions whether the exemption provision of I.C. § 6–2–1–7(a) would apply, whether the application of I.C. § 6–2–1–2 to GFC's income would violate the United States Constitution, or whether affirmance would be mandated by the doctrine of legislative acquiescence.[1]

We affirm.

1. As to the doctrine of legislative acquiescence, the trial court found that the Department had audited GFC in 1964 for the fiscal years 1961–63. Not until after a second audit had been completed in 1977 did the Department claim that taxes were owed for the years 1971–74, even though the reporting procedure had remained substantially unchanged since 1961. Without deciding whether the doctrine would apply here, we note this language by Justice Pivarnik in discussing *Whirlpool Corp. v. State Board of Tax Commissioners* (1975), 167 Ind. App. 216, 338 N.E.2d 501:

The essential facts in *Whirlpool* are identical to the facts surrounding Carrier's actions. Relying· on the statute and its predecessor here involved, Whirlpool, since at least 1962,

had claimed the exemption and said claim was never questioned by the Board. Then, in 1965, the Board under the new amendment to the statute challenged the claimed exemption. Following a series of hearings and meetings the Board ruled that Whirlpool was entitled to the exemption. Thereafter, in 1966, 1967, and 1968, Whirlpool claimed the exemption without incident. In 1969, however, the Board once again challenged Whirlpool's attempt to claim the exemption. The subject of Whirlpool's appeal was the challenge to the 1969 denial of the exemption. Whirlpool's contention was that the Board by its actions in 1965, 1966, 1967, and 1968 had acquiesced in the exemption and therefore estopped to deny it in 1969. The Court of Appeals cited *Baker v. Compton*, (1965) 247

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur except to the extent that Footnote 1 of the majority opinion implies that once an administrative agency has construed a statute, it may never change its interpretation unless the statute has been amended by the General Assembly. Such implication would require an agency to adhere to an erroneous interpretation of the law and await either a legislative or judicial correction. It is my belief that the law should encourage governmental admission of error and self-generated solutions to problems. Accordingly I take issue with the following overbroad language from *Whirlpool Corp. v. State Board of Tax Commissioners* (1st Dist. 1975) 167 Ind.App. 216, 338 N.E.2d 501 at 507:

> "The legislature therefore must be deemed to have acquiesced in the exemption and under the guidance of *Baker v. Compton, supra,* such acquiescence is binding and controlling herein."

While the fiction of legislative acquiescence may provide a tool for legal problem solving and have great persuasive effect in the courts, it should not be the only factor considered. In actuality, the doctrine of legislative acquiescence is helpful only when the earlier administrative interpretation was correct. *See State Board of Tax Commissioners v. Carrier Corp.,* (1977) 266 Ind. 615, 365 N.E.2d 1385. It is not applicable if the earlier interpretation was in error. The seminal Indiana case, *Baker v. Comp-*

Ind. 39, 211 N.E.2d 162, *State Board of Tax Commissioners v. Warner Press, Inc.,* (1969) 145 Ind.App. 20, 248 N.E.2d 405, and other cases to establish the rule of legislative acquiescence as a recognized doctrine in this state. The *Whirlpool* court then stated, at 338 N.E.2d 507:
"[I]n 1965, the same dispute as in the case at bar was resolved by the Board in favor of Whirlpool. On the basis of the 1965 dispute, Board permitted Whirlpool's exemption in 1966, 1967 and 1968. The legislature therefore must be deemed to have acquiesced in the exemption and under the guidance of *Baker v. Compton, supra,* such acquiescence is binding and controlling therein.

*ton,* (1965) 247 Ind. 39, 211 N.E.2d 162, 164, recognized this:

> "Although the interpretation placed upon the statute by an administrative agency of the state may not be binding upon this Court if the interpretation is incorrect, such interpretation as has been made and applied in a number of previous adoptions, is entitled to considerable weight ...."

*State Board of Tax Commissioners v. Carrier Corp.,* (1977) 266 Ind, 615, 619, 365 N.E.2d 1385, 1387. *See also State Board of Tax Commissioners v. Warner 'Press', Inc.,* (1969) 145 Ind.App. 20, 248 N.E.2d 405, *modified on other grounds,* 254 Ind. 183, 258 N.E.2d 621; *State Board of Tax Commissioners v. Wright,* (1966) 139 Ind.App. 370, 215 N.E.2d 57; *cf. Indiana Department of Revenue v. Cave Stone, Inc.,* (1980) Ind.App. 409 N.E.2d 690 (no reliance on statute); *State Board Tax Commissioners v. Philco-Ford Corp.,* (1976) Ind.App. 356 N.E.2d 1379 (doctrine inapplicable); *Indiana Department of State Revenue v. Sohio Petroleum Co.,* (1976) 170 Ind.App. 123, 352 N.E.2d 95 (no reliance on statute).